# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>KENNETH N. VREDENBURG,<br><br>　　　　Defendant. | Case No. 6:17-po-00134-SAB<br><br>MEMORANDUM DECISION AFTER COURT TRIAL |

On February 21, 2017, a citation was filed charging Kenneth N. Vredenburg with a violation of 36 C.F.R. § 4.21(c), exceeding the speed limit by travelling 35 miles per hour in a 25 mile per hour zone. (ECF No. 1.) A court trial was conducted before the undersigned on May 5, 2017. (ECF No. 17.) Susan St. Vincent represented the Government and Defendant Kenneth Vredenburg appeared pro se. During the trial, two witnesses testified for the Government, National Park Service Rangers Rory Davenport and Jack Hoeflich. Defendant also testified. Having considered the evidence presented during the trial of this matter, the Court issues the following order finding Defendant Vredenburg guilty of a violation of 36 C.F.R. § 4.21(c).

**I.**

**FACTUAL FINDINGS**

Ranger Rory Davenport completed law enforcement academy in Santa Rosa, California. He has received continuing education in the course of his employment which includes traffic

1

enforcement. Ranger Davenport's vehicle had a standard radar unit with forward and rear antennae that can run stationary or moving radar in the forward and rear directions. He received California Highway Patrol training on the operation of the unit, including daily calibration check, and has been certified as a radar operator. (Certificate of Attainment, Government's Exhibit 1.)

Ranger Davenport has been employed as a United States Park Ranger for the past three seasons. On September 25, 2016, Ranger Davenport was on duty doing standard patrol within the jurisdiction of Yosemite National Park. That day Ranger Davenport was in uniform and on solo patrol in a marked patrol vehicle. The radar unit and tuning forks had been certified as accurate on September 19, 2015. (Certificate of Accuracy for Doppler Radar Unit, Government's Exhibit 2; Tuning Fork Certificate of Accuracy, Government's Exhibit 3.) When he came on duty that day, Ranger Davenport did a standard check of the radar unit. He determined that the radar unit was working properly and passed the calibration check.

At 10:28 p.m., another patrol vehicle called in to dispatch from the Curry four-way intersection. At approximately 10:30 p.m., Ranger Davenport was operating stationary radar at Curry four-way intersection which is at Northside Drive and Curry Village Drive. Ranger Davenport was on the southeast corner of the intersection, facing the Stoneman Bride with Curry Village behind his vehicle. From where he was stationed, Ranger Davenport was able to see traffic in all four directions at the intersection. He had a particularly clear view of the straight section along Stoneman Bridge with no obstructions to his view. The speed limit in the area was 25 miles per hour in all directions.

Defendant was driving down Southside Drive. He saw a ranger at the Curry four-way. There was a gray car in front of him. At approximately 10:35 p.m., Ranger Davenport saw a dark colored Mercedes approach the intersection from Southside Drive and make a full stop. The vehicle then made a left hand turn onto River Straight on Northside Drive over Stoneman Bridge. The vehicle accelerated quickly over Stoneman Bridge and Ranger Davenport estimated that the vehicle's speed was 35 miles per hour. The vehicle was heading down Northside Drive over Stoneman Bridge. Ranger Davenport turned his radar unit on and the radar displayed the speed at 35 miles per hour. Ranger Davenport placed his car in drive and followed the vehicle

1 down Northside Drive.

2 Ranger Davenport caught the vehicle on Northside Drive near the Ahwahnee Meadow 3 before the next intersection.  Since there was not a safe location to stop the vehicle, Ranger 4 Davenport followed the vehicle into Yosemite Village and made a stop at the Church Bowl 5 pullout by the meadow.  Ranger Davenport contacted the driver, identified as Defendant 6 Vredenburg and identified him by his driver's license.  Two other rangers arrived on the scene. 7 The driver had a radar detector in his vehicle and Ranger Davenport had a discussion about the 8 legality of radar detectors versus radar jammers with the two other rangers.  Ranger Davenport 9 issued Defendant Vredenburg a citation for exceeding the speed limit by driving 35 miles per 10 hour in a 25 mile per hour zone.  The contact ended around 10:45 p.m.

11 At the end of his shift, Ranger Davenport again checked the calibration on the radar unit 12 and it was working properly.

## II.

## DISCUSSION AND DECISION

15 Defendant has been charged with a violation of 36 C.F.R. § 4.21(c).  To prove a violation 16 of 36 C.F.R. § 4.21(c), it is the Government's burden to establish beyond a reasonable doubt that 17 Defendant Vredenburg was operating the vehicle at a speed in excess of the speed limit.

18 Ranger Davenport testified that he received training in traffic enforcement, including 19 radar operations.  He observed Defendant's speed and estimated that the vehicle was travelling 20 35 miles per hour. Ranger Davenport confirmed his estimation with the radar which also showed 21 that Defendant was travelling 35 miles per hour.  The area in which Defendant was travelling 22 was posted as having a speed limit of 25 miles per hour.  In this instance, the Court finds that the 23 Government has presented evidence to meet its burden of proving that Defendant Vredenburg 24 was operating his vehicle at a speed in excess of the posted speed limit.

25 At trial, although not required to do so, Defendant presented evidence and argued to 26 create doubt that Ranger Davenport was not credible and presented his theories to refute Ranger 27 Davenport's testimony.  Defendant contended that the construction signs in the area could have 28 affected the radar.  While Defendant presented evidence that there were signs in the area in

3

which he was travelling, he presented no evidence to support the argument that the radar gun would have incorrectly assessed his speed due to the presence of such signs.

The evidence presented at trial established that a patrol vehicle was parked at the Curry four-way intersection. Ranger Davenport testified that he was parked at the Curry four-way when he observed Defendant's vehicle come to a stop and make a left turn onto Northside Drive. Defendant testified that Ranger Davenport was not parked at the Curry four-way intersection but that he saw a patrol vehicle at the Curry four-way intersection when he made a left turn on Northside Drive.

Defendant testified that as he approached the curve on Northside Drive, Ranger Davenport was coming from the opposite direction on Northside drive and his radar detector alarmed. The patrol vehicle made a u-turn at a turnout and began to follow him. However, upon cross examination, Defendant stated that he was unable to see the driver of the patrol vehicle although he never lost sight of the vehicle.

Defendant also testified that if Ranger Davenport was parked at the Curry four-way his radar detector would have alarmed because it always alarms when law enforcement vehicles are present. But Defendant testified that a law enforcement vehicle was present at the Curry four-way and his radar detector did not alarm. Ranger Davenport testified that this radar was in the hold mode which allows the radar to be on but not to be shooting radar signals. Defendant presented no evidence that his radar detector would have alarmed in the situation presented.

While Defendant testified that he saw a patrol vehicle make a u-turn at a turnout after it passed him travelling in the opposite direction, there was no testimony that there were any turnouts in this area. Specifically, Ranger Davenport testified that he did not pull Defendant over until they had gone past the area where the market is located because there were no turnouts where he could safely stop the vehicle. The Court gives substantial weight to this testimony due to the fact that Ranger Davenport has significant familiarity with the area as he was working as a fulltime seasonal ranger in the park.

Defendant argues that the fact that Ranger Davenport noted that the color of his vehicle as gray discredit's Ranger Davenport's testimony and argues that Ranger Davenport meant to

4

1 stop the vehicle that was in front of him. Upon review of the photograph admitted into evidence, Ranger Davenport stated that the vehicle appears to be blue. (Defendant's Exhibit C.) The citation itself states that a dark vehicle was observed. The color of the vehicle in this instance is irrelevant. The color gray has a wide variety of shades that range from light to dark. The Court notes that the stop at issue occurred after 10:30 in the evening when it would be dark, and Defendant does not contest that his vehicle was stopped or that he was driving the vehicle at the time.

In considering the credibility of the parties, the Court also considers Defendant's testimony that he would not drive that fast with his testimony regarding his use of the radar detector. Defendant's testimony on his use of the radar detector is inconsistent with his testimony that he does not speed.

Finally, the Court finds that Ranger Davenport's testimony regarding what he observed is consistent with Defendant's testimony regarding the route that he was travelling at the time of the incident. Ranger Davenport testified that he was parked at the Curry four-way and saw Defendant's vehicle turn left from Southside Drive onto River Straight after making a complete stop at the intersection. Ranger Davenport testified that he followed Defendant from River Straight along Northside Drive and into Yosemite Village. This testimony is consistent with Defendant's testimony and supports Ranger Davenport's testimony regarding what he observed and his position at the time he determined Defendant's speed.

Based on the evidence presented by the parties during the trial, the Court finds that the Government has proved beyond a reasonable doubt that Defendant Vredenburg is guilty of a violation of 36 C.F.R. § 4.21(c) and that the evidence presented by Defendant did not refute the evidence of guilt presented by the Government.

/ / /

/ / /

/ / /

/ / /

/ / /

## III.

## CONCLUSION AND ORDER

Accordingly, IT IS HEREBY ORDERED that this matter is set for sentencing on June 14, 2017, at 1:30 p.m. in Courtroom 9. The parties may file a sentencing memorandum one week prior to the sentencing hearing. Defendant is required to be present for sentencing.

IT IS SO ORDERED.

Dated:  **June 9, 2017**

UNITED STATES MAGISTRATE JUDGE